**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000960
10-JUN-2019
07:59 AM**

NO. CAAP-15-0000960

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE MATTER OF THE
ELAINE EMMA SHORT REVOCABLE LIVING TRUST
AGREEMENT DATED JULY 17, 1984, as amended

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(T. NO. 15-1-0165)

MEMORANDUM OPINION
(By: Reifurth, Presiding Judge, and Hiraoka, J., with
Circuit Judge Nakasone, in place of Ginoza, C.J.,
Fujise, Leonard, and Chan, JJ., all recused)

This case arises from a petition by Trustee-Petitioner-Appellee/Cross-Appellee First Hawaiian Bank ("Bank") for instructions regarding distribution, termination, and modification of the Elaine Emma Short Revocable Living Trust Agreement, dated July 17, 1984 (the "Initial Trust"), as amended by the Amendment of Trust, dated March 10, 1993 (the "1993 Amendment") (as amended, the "Trust"). The Initial Trust was established by Elaine Emma Short ("Elaine") for herself, her spouse, Clarence Raymond Short ("Clarence"), and their two sons, William Short ("William") and Respondent-Appellee/Cross-Appellant David Short ("David"). William and Clarence predeceased Elaine. After Elaine died, a controversy arose between David and some of

Elaine's more distant relatives, including Respondents-Appellants/Cross-Appellees Kristin Linae Cook Kline, Larry Thomas Cook ("Larry"), Cathy Leann Cook Bornhorst, Susan Kay Cook Galvin, and Jodi Charlene Cook Bosben (collectively "the Cooks"), who were unnamed contingent remainder beneficiaries of the Trust.

The Cooks appeal and David cross-appeals from the December 16, 2015 Hawai'i Rules of Civil Procedure Rule 54(b)-certified Judgment on the Order Granting Petition for Instructions Regarding Distribution and Termination, and for Modification of Trust ("Judgment"), and the December 16, 2015 Order Granting Petition for Instructions Regarding Distribution and Termination, and for Modification of Trust ("Order"). Both the Judgment and the Order were entered by the Circuit Court of the First Circuit ("Probate Court")[1] in favor of Bank.

The Order: (1) instructed that the Trust created for David terminates upon David's death; (2) modified the Trust so that Bank may make discretionary distributions of the principal to David; (3) instructed that Bank is not required to provide financial information relating to the Trust and "the Clarence Raymond Short Revocable Living Trust Agreement dated July 17, 1984, as amended" ("the Clarence Trust") to the Cooks; and (4) instructed that the Trust shall pay attorneys' fees, tax, and costs of the Cooks in the amount of $19,789.29 from the principal of the Trust. The termination of the Trust is not at issue in this appeal.

For reasons discussed below, we hold that the Probate Court did not err in permitting Bank to modify Article ("Art.") V., paragraph B, subparagraph (a) of the Trust, allowing Bank to make discretionary principal distributions to David, and in not requiring Bank to provide financial information relating to the Trust, including David's total income and David's income from the Clarence Trust to the Cooks. We hold, however, that the Probate Court abused its discretion in granting the Cooks' request to have their attorneys' fees and costs paid from the Trust.

---

[1]    The Honorable Derrick H.M. Chan presided.

I.    BACKGROUND

       A.    Underlying Facts

       Elaine and Clarence were parents to two sons, David and
William.  On July 17, 1984, Elaine, as Settlor, executed the
Initial Trust.

       Art. V of the Initial Trust, titled "Distribution of
Income and Principal of Trust Estate After the Settlor's Death,"
paragraph B., titled "If Descendants Only Survive," provides in
relevant part:

> B.    Upon the Settlor's death, if the Settlor is
> survived by any of the Settlor's descendants, but not by the
> Settlor's spouse CLARENCE RAYMOND SHORT, then at such time
> the Successor Trustee shall hold, administer and distribute
> all of the then remaining residuary trust estate, including
> accumulated and accrued but undistributed income and any
> property received from the Settlor's probate estate, as
> follows:
>
> (a) The Successor Trustee shall divide the aforesaid
> trust property into two equal shares.  The Successor Trustee
> shall hold one of such shares as a separate trust for the
> benefit of the Settlor's son, WILLIAM SHORT, and the
> Successor Trustee shall hold the other of such shares as a
> separate trust for the Settlor's son, DAVID SHORT.  The
> Successor Trustee shall pay the income and principal of each
> separate trust to the Settlor's son for whom such share was
> set aside, in accordance with his needs for health,
> education, support and maintenance in his accustomed
> standard of living.  As each of the Settlor's said sons
> reaches the age of thirty-five (35) years, the Successor
> Trustee shall distribute to him one-half (½) of the property
> remaining in the separate trust set aside for his benefit.
> When each of the Settlor's sons reaches the age of
> forty-five (45), the Successor Trustee shall distribute the
> balance of the trust balance remaining in the separate trust
> set aside for his benefit, and that trust shall thereupon
> terminate.

("Art. V.B.(a)")

       On March 10, 1993, Elaine executed the 1993 Amendment.
The 1993 Amendment, in part, amended Art. V.B.(a) in regards to
the instructions for the payment to David and William from the
trust upon the death of Elaine if she is not survived by
Clarence:

> (a) The Successor Trustee shall divide the aforesaid
> trust property into two equal shares.  The Successor Trustee
> shall hold one of such shares as a separate trust for the
> benefit of the Settlor's son, WILLIAM SHORT, and the Successor
> Trustee shall hold the other of such shares as a separate
> trust for the Settlor's son, DAVID SHORT.  The Successor
> Trustee shall pay all or portions of the income of each
> separate trust to the Settlor's son for whom such share was
> set aside, in accordance with his needs for health, education,

3

> support and maintenance as determined by the Successor Trustee in its sole discretion, with full discretion to withhold any income from time to time if circumstances so warrant. In the case of William Short who has a drug-related disability at the present time, the Successor Trustee shall withhold income for everything but the vital necessities unless said son is drug-free and has continued to be for at least one year, the Successor Trustee to have absolute discretion in making such determinations from time to time.

("Amended Art. V.B.(a)")

On June 8, 1993, William passed away.[2] On April 10, 2010, Clarence passed way. On January 3, 2012, Elaine passed way. Upon Elaine's death, David became the only current and ascertained beneficiary of the Trust, and Bank became the Successor Trustee. Neither David nor William had children at the time of Elaine's passing.

B.      Procedural history

On August 12, 2015, Bank filed its Petition for Instructions Regarding Distribution and Termination, and for Modification of Trust ("Petition"). The Petition requested in pertinent part that the Probate Court:

> C.   Instruct the Trustee that the separate subtrust created under subparagraphs B(a) and B(b) of Article V (the "Subtrust") of the Elaine Emma Short Revocable Living Trust dated July 17, 1984, as amended . . . shall terminate upon the death of the Settlor's son.
>
> D.   Instruct the Trustee that discretionary distributions of principal may be made from the Subtrust to the Settlor's son.
>
> E.   Modify the Trust to provide for a termination date and the discretionary distribution of principal, by amending subparagraph B(b) of Article V of the Trust, . . . to read

---

[2]      Art. V., paragraph B., subparagraph (b) of the Trust provides instructions should one or both sons not survive:

> If either of the Settlor's said sons shall not be living at the time when a separate trust otherwise would be established hereunder for his benefit, the property which otherwise would have funded the separate trust for his benefit shall be distributed to his issue, per stirpes; and, if he leaves no issue who are then living, such property shall be held by the Successor Trustee of the separate trust established for the other of the Settlor's said sons; and, if neither of the Settlor's said sons is living at the time when separate trusts otherwise would be established for them hereunder, all of the aforesaid trust property shall be distributed to the Settlor's heirs at law, determined by the laws of the State of Hawaii in force at such time.

("Art. V.B.(b)")

in its entirety as follows:

> (a)  The Successor Trustee shall divide the aforesaid trust property into two equal shares. The Successor Trustee shall hold one of such shares as a separate trust for the benefit of the Settlor's son, WILLIAM SHORT, and the Successor Trustee shall hold the other of such shares as a separate trust for the Settlor's son, DAVID SHORT. The Successor Trustee shall pay all or portions of the income *and portions of the principal* of each separate trust to the Settlor's son for whom such share was set aside, in accordance with his needs for health, education, support and maintenance, as determined by the Successor Trustee in its sole discretion, with full discretion to withhold any income *or principal* from time to time if circumstances so warrant, *and each separate trust shall terminate upon the death of the Settlor's son for whom such share was set aside.* In the case of William Short who has a drug-related disability at the present time, the Successor Trustee shall withhold income for everything but the vital necessities unless said son is drug-free and has continued to be for at least one year, the Successor Trustee to have absolute discretion in making such determinations from time to time.
>
> F.  Approve and allow payment of fees and costs to Goodsill Anderson Quinn & Stifel, attorneys for petitioner, in connection with this Petition, in amounts to be described in and supported by an Affidavit in Support of Attorney's Fees and Costs to be filed herein.

(Emphasis added to highlight the proposed modifications.) Bank provided notice of the Petition and the hearing to David and Elaine's then-current heirs at law, the Cooks, as contingent remainder beneficiaries. On August 12, 2015 David filed an affidavit which essentially supported Bank's position.

The Cooks filed a response and objection to the Petition, concurring with Bank's request regarding the termination date, but challenging the request regarding distribution of principal to David. In letters dated September 16, 2015; October 1, 2015; and October 20, 2015, the Cooks requested that Bank provide financial information relating to the Trust, including (i) a listing of the assets in the Trust at the time of Elaine's death; (ii) a statement of accounts for the Trust for the years 2012, 2013, and 2014; (iii) a statement of income distributed to David from the Trust for the years 2012, 2013, 2014, and 2015; (iv) income distributions to David from the Clarence Trust for the years 2012, 2013, 2014, and 2015; and (v) David's total income from 2012 through 2014. Bank responded,

stating that it would attach a copy of the first request letter to its reply and present the matter to the Probate Court. On September 24, 2015, Bank filed a reply to the Cooks' response and objection to the Petition.

David filed a response to Bank's Petition and a reply to the Cooks' response and objection to the Petition. David attached to his response a supporting Declaration by Carol Short, dated October 11, 2015 ("Carol Short Declaration"). The Cooks subsequently filed a supplemental response and objection to the Petition, and attached the Supplemental Declaration of Susan Kay Cook Galvin, dated October 29, 2015.

Bank filed a supplement to its Petition and second supplement to its reply to the Cooks' supplemental response and objection. Bank objected to the Cooks' request for information relating to the income David received from the Clarence Trust and David's total income for the above-stated years as the request infringed on Bank's duty to preserve the confidentiality of trust information, and requested that the Probate Court instruct it as to whether and to what extent the remaining requested information could be provided to the Cooks.

On November 19, 2015, the Probate Court held a hearing on the Petition and on December 1, 2015, the Cooks filed their Affidavit in Support of Attorneys' Fees and Costs.

On December 16, 2015, the Probate Court entered the Order and Judgment granting the Petition. The Order instructed, in relevant part, that the Trust[3] shall terminate upon David's death; that Bank may make discretionary distributions of principal to David; that Bank is not required to provide financial information to the Cooks; and that Bank would pay any attorney's fees, as approved by the Probate Court, from the principal of the Trust. The Order modified the Trust to provide for a termination date and the discretionary distributions of principal by modifying Amended Art. V.B.(a) as set out above.

_____

[3] The Order discusses the separate trust created by Amended Art. V.B.(a) as it relates to David as "the 'Subtrust'".

The Cooks timely appealed and David timely cross-appealed from the Order and Judgment.

II. POINTS OF ERROR

On appeal, the Cooks assert that the Probate Court erred: (1) in permitting Bank to modify Art. V, paragraph B of the Trust, allowing Bank to invade the Trust corpus to make discretionary principal distributions; and (2) when it failed to require Bank to provide financial information to the Cooks relating to the Trust, including David's total income, and David's income from the Clarence Trust.

On cross-appeal, David contends that the Probate Court abused its discretion by granting the Cooks' request to have their attorneys' fees and costs, including fees and costs associated with an accounting, paid from the Trust because their fees were incurred exclusively for their benefit and because there is no right to an accounting.

III. STANDARDS OF REVIEW

*Construction of a Trust*

> The construction of a trust is a question of law which [the appellate court] reviews de novo. When construing a trust, [the appellate court] is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills. "A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law."

*In re Medeiros Testamentary Trust and Life Ins. Trust*, 105 Hawai'i 284, 288, 96 P.3d 1098, 1102 (2004) (citations omitted) (first citing, then quoting *Trust Created Under the Will of Damon*, 76 Hawai'i 120, 123-24, 869 P.2d 1339, 1342-43 (1994)).

*Statutory Interpretation*

> The interpretation of a statute is a question of law reviewable de novo.

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

7

*Ka Pa'akai O Ka 'Aina v. Land Use Comm'n*, 94 Hawai'i 31, 41, 7
P.3d 1068, 1078 (2000) (citations omitted) (quoting *Amantiad v.
Odum*, 90 Hawai'i 152, 160, 977 P.2d 160, 168-69 (1999)).

### Attorneys' Fees and Costs

> "[The appellate] court reviews the denial and granting
> of attorney's fees under the abuse of discretion standard."
> The same standard applies to [the appellate] court's review
> of the amount of a trial court's award of attorney's fees.
> "An abuse of discretion occurs if the trial court has
> clearly exceeded the bounds of reason or has disregarded
> rules or principles of law or practice to the substantial
> detriment of a party litigant."

*Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawai'i*, 106
Hawai'i 416, 431, 106 P.3d 339, 354 (2005) (citations and
ellipses omitted) (quoting *Chun v. Bd. of Trs. of Employees' Ret.
Sys. of State of Hawai'i*, 92 Hawai'i 432, 439, 992 P.2d 127, 134
(2000)).


IV.  DISCUSSION

     A.   The Probate Court did not err in modifying the Trust to
          allow payment of discretionary distributions of
          principal to David in light of Elaine's apparent
          primary intent to provide for her issue and their
          issue.

          We interpret the Cooks' first point of error as
contending that the Probate Court erred in modifying paragraph B
of Art. V. of the Trust to allow discretionary distributions of
principal to David where there is no ambiguity in the language of
the 1993 Amendment and where such distributions contradict the
Trust's plain language.  Specifically, the Cooks argue that the
1993 amendment of Art. V.B.(a) of the Initial Trust evidences
Elaine's intent to limit David to income because under that
paragraph in the Initial Trust David was entitled to "income *and
principal*" while as a result of the 1993 amendment, David was
only entitled to income.  In the alternative, the Cooks contend
that if the Probate Court looked beyond the four corners of the
Trust, extrinsic evidence supports a conclusion that Elaine
intended to prohibit principal distributions from the Trust to
David because "David simply lacked a warm relationship with
Elaine."

8

> When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills. "A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law." Additionally, "in construing a trust document to determine the settlor's intent, the instrument must be read as a whole, not in fragments."

*In re Lock Revocable Living Tr.*, 109 Hawai'i 146, 151-52, 123 P.3d 1241, 1246-47 (2005) (citations omitted) (first citing, then quoting *Trust Created Under the Will of Damon*, 76 Hawai'i 120, 124, 869 P.2d 1339, 1343 (1994)). In keeping the settlor's intent at the forefront, "a particular and minor intent is never permitted to frustrate a general and ulterior object of paramount consideration." *Hawaiian Tr. Co. v. Breault*, 42 Haw. 268, 274 (Haw. Terr. 1958) (quoting *In re Deering's Estate*, 29 Haw. 854, 864-65 (Haw. Terr. 1927)). Thus, "favor will be accorded to those beneficiaries who appear to be the special objects of the testator's bounty." *Id.* (quoting *Deering's Estate*, 29 Haw. at 864-65).

Our jurisdiction has adopted "the view allowing extrinsic evidence, i.e., all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain." *In re Lock*, 109 Hawai'i at 153, 123 P.3d at 1248 (quoting *Hokama v. Relinc Corp.*, 57 Haw. 470, 476, 559 P.2d 279, 283 (1977)). Therefore, we first determine whether Elaine's intent to allow discretionary payments of principal to David can be unambiguously ascertained from the plain language of Amended Art. V.B.(a) and the surrounding provisions, and, if not, whether extrinsic evidence supports the Probate Court's ruling.

The Order modified the Trust to allow discretionary distributions of principal by modifying Amended Art. V.B.(a) to read as follows:

> (a) The Successor Trustee shall divide the aforesaid trust property into two equal shares. The Successor Trustee shall hold one of such shares as a separate trust for the benefit of the Settlor's son, WILLIAM SHORT, and the Successor Trustee shall hold the other of such shares as a separate trust for the Settlor's son, DAVID SHORT. The Successor Trustee shall pay all or portions of the income

> *and portions of the principal of each separate trust to the
> Settlor's son for whom such share was set aside, in
> accordance with his needs for health, education, support and
> maintenance, as determined by the Successor Trustee in its
> sole discretion, with full discretion to withhold any income
> or principal from time to time if circumstances so warrant,
> and each separate trust shall terminate upon the death of
> the Settlor's son for whom such share was set aside. . . .*

(Emphasis added to highlight the modification.)

As the Cooks correctly point out, Amended Art. V.B.(a)
does not instruct the trustee on principal distributions.  The
Cooks assert that the 1993 Amendment, which they emphasize denied
David access to principal and gave the Successor Trustee "*full
discretion* to withhold *any income* from time to time if
circumstances so warrant," clearly evidences that Elaine intended
the Successor Trustee "to put the reins on David" and to preserve
the trust corpus after David's death.  The Cooks additionally
contend that since David was not likely to leave any issue, they
"were clearly no afterthought."

The 1993 Amendment does not evidence Elaine's intent to
limit David to only income or to preserve the principal for the
Cooks.  Rather, Elaine's primary intent appears to be to provide
for her children under Art. V., paragraph B., subparagraph (a) of
both the Initial Trust and 1993 Amendment, and, if David or
William should predecease her, their issue (i.e., Elaine's
grandchildren) under Art. V., paragraph B., subparagraph (b).  By
contrast, the Cooks only lay claim to the assets in the Trust as
"the Settlor's heirs at law as determined by the laws of the
State of Hawaii in force at such time" through a default
provision which applies on the condition that David and William
*and* their issue, should they have any, are no longer surviving.
The "full discretion to withhold any income from time to time if
circumstances so warrant" language under Amended Art.
V.B.(a)—which the Probate Court left intact—was likely added to
account for William, who, as the subsequent sentence indicates,
had a "drug-related disability" and who died approximately three
months after the 1993 Amendment was executed.

The Cooks additionally assert that because the 1993
Amendment changed the trustee to Bank, "[Elaine] wanted a

corporate trustee, [Bank,] to properly police the income stream that David would still receive." Under Art. XXII of the Initial Trust, David, William, and Kenneth M.S. Wong ("Kenneth") would collectively become successor trustee if the Settlor was incapacitated or incompetent and if Clarence could no longer serve as trustee; and if David, William, or Kenneth were unable to act for any reason, Bank would become the successor trustee. Under paragraph 7 of the 1993 Amendment, Art. XXII was amended to provide that "[Bank] shall serve as successor trustee after the death, resignation, incapacity or incompetency of [Elaine] and [Clarence]." The fact that a corporate trustee was named as Successor Trustee does not establish or suggest that Elaine intended to limit David to income of the Trust. We therefore decline to speculate into the matter further.

The Cooks also argue that "as of 1993, the Trust envisioned that the Trust corpus would be distributed **only** to either David's heirs—an admittedly highly unlikely scenario—or much more likely, to Elaine's heirs at law—the [Cooks]." They claim that this is evidenced by the 1993 Amendment which expressly granted the trustee authority to minimize general excise tax consequences "for the benefit of 'skip persons' who would most likely be Elaine's descendants, i.e., the [Cooks]." The Cooks' interpretation of the generation skipping transfer provision, however, is speculative. As explained above, it is more likely that Elaine's primary intent was to provide for her children and their issue. Therefore, the more likely explanation for the tax-provision is that Elaine hoped to one day have grandchildren and to provide for them. See Breault, 42 Haw. at 274 ("[T]he dominant or primary intent that is gathered from all the provisions of the will [or trust] must control and, where doubtful, favor must be accorded to those beneficiaries who appear to be the special objects of the testator's bounty.").

Elaine's primary intent aside, however, the Trust does not contain any provisions limiting the Trustee's ability to distribute principal or prohibit principal distributions to David, let alone any provisions addressing when principal

payments should be made or when all the principal should be paid out.[4] An ambiguity therefore arises as to the distribution of principal to David under Amended Art. V.B.(a) of the Trust. *In re Lock*, 109 Hawai'i at 153-54, 123 P.3d at 1248-49 (defining an ambiguity in the context of trust interpretation as "any doubt or controversy").

Therefore, we turn to extrinsic evidence with respect to the circumstances surrounding the creation of the Trust to aid us in construing Amended Art. V.B.(a) in accordance with Elaine's intent. *In re Lock*, 109 Hawai'i at 154, 123 P.3d at 1249.

Here, the extrinsic evidence—which includes the Carol Short Declaration; David's August 12, 2015 affidavit; and Elaine's Will dated September 4, 1979 which was presented for probate on October 17, 2013—supports the conclusion that Elaine intended first and foremost to provide for David and William, and their respective issue.

According to Carol Short—who was the surviving spouse of Elaine's brother-in-law, who knew Elaine and Clarence for over forty years, who resided in Hawai'i from 1971 until 2000 during which time she communicated regularly and had a close relationship with Elaine and Clarence, and who continued to communicate with Elaine until she passed away—"Elaine and Clarence provided complete financial support for [] David . . . during [their] lifetimes[,]" and she had "no doubt that it was Elaine's intent to continue providing complete financial support for David after her death, the same as she had during her lifetime." Carol Short also stated that Elaine never mentioned visiting the Cooks, or the Cooks visiting Elaine, and their names never came up in conversation. According to David, he believed that Elaine had little to no contact with the Cooks for many decades prior to her death, and that Elaine intended for her children and their issue to be the primary beneficiaries of the Trust.

---

[4] The only reference regarding the payment of principal appears to be in Art. XXIV., paragraph G. of the Trust, which defines "trust termination" as follows: "A trust will terminate if all principal is paid out under mandatory or discretionary powers granted in such trust."

Elaine's Will likewise reflects her intent to provide for David to the exclusion of the Cooks. Elaine's Will distributes the residue of her estate, in a "Residuary Trust," to David and William, following the death of Clarence, and in the alternative, if David and William should not survive, to their issue.[5/] By contrast, Elaine's Will makes no mention of her "heirs at law" as contingent remainder beneficiaries of her estate.

The Cooks submit statements and photographs "detailing decades of communication and visits" between the Cooks and Elaine and assert that "David was not a point of contact for his parents and could not even be found by authorities concerned for his parents' well-being." We are unpersuaded. The Supplemental Declaration of Susan Kay Cook Galvin, which the Cooks reference, states that Elaine and Clarence visited them in the 1960s, 1970s, 1980s, and 1990s for significant life events such as weddings, an anniversary celebration, and a family reunion. In 1966, Larry, Elaine's godchild, spent six weeks with Elaine and Clarence in Hawai'i after graduation. Notwithstanding these visits, alleged to demonstrate a "warm relationship with Elaine over several decades," Elaine failed to include any of the Cooks in the Initial Trust or the 1993 Amendment. Additionally, the Petition for Appointment of a Guardian of the Person of an Incapacitated Person, filed July 6, 2005, which the Cooks rely on to show that David "was not a point of contact for his parents and could not even be found by authorities concerned for his parents' well being[,]" and that he "simply lacked a warm relationship with Elaine," merely states that the identity and whereabouts of Elaine's adult children are unknown. That does not, in our view, establish that Elaine intended now to provide for her heirs-at-law.

Accordingly, the Cooks fail to show that the Probate Court erred in modifying Amended Art. V.B.(a) to allow the payment of discretionary distributions of principal to David in

---

[5/]    Art. IV.(a) of Elaine's Will contains language very similar to that in Art. V.B.(a) and Art. V.B.(b) of the Initial Trust.

light of Elaine's apparent primary intent, which was to provide for her children and their issue, the "beneficiaries who appear to be the special objects of the testator's bounty." *See, e.g.,* *Breault,* 42 Haw. at 274 (authorizing trustee to make distributions of principal to primary beneficiaries, who were the apparent "special object of the testator's bounty" when the trust only instructed trustee as to distributions of income). The Cooks first point is therefore without merit.

      B.    The Probate Court did not err in refusing to order Bank to provide financial information relating to the Trust and the Clarence Trust to the Cook Respondents.

In their second point of error, the Cooks assert that the Probate Court erred when it failed to require Bank to provide financial information relating to the Trust and the Clarence Trust to the Cooks.

"A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law." *In re Lock,* 109 Hawai'i at 151-52, 123 P.3d at 1246-47 (quoting *Trust of Damon,* 76 Hawai'i at 124, 869 P.2d at 1343). "The terms of a trust may alter the amount of information a trustee must give to the beneficiaries . . . and also the circumstances and frequency with which, and persons to whom, it must be given." Restatement (Third) of Trusts § 82 cmt. a(2) (2007). "Except as prohibited or limited by statute, the terms of a trust (or waiver by a beneficiary) can properly dispense with or limit the normal requirements for submission of reports or accountings . . . imposed by statute." Restatement (Third) of Trusts § 83 cmt. d (2007).

Hawai'i grants a settlor broad discretion to control the administration of the trust, including submission of accounts and reports to beneficiaries, without court involvement. *See* Haw. Rev. Stat. § 560:7-201(b) (2006) ("The management and distribution of a trust estate, submission of accounts and reports to beneficiaries, . . . and other aspects of the administration of a trust shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention and

without order, approval or other action of any court . . . ."); *see also Dowsett v. Hawaiian Tr. Co.*, 47 Haw. 577, 581, 393 P.2d 89, 93 (1964) ("[T]he court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bonds of a reasonable judgment." (quoting Restatement (Second), Trusts, § 187, comment e (1959))).

The Cooks contend that they are statutorily entitled to a listing of the Trust assets at the time of Elaine's death in 2012; a statement of accounts for the Trust for the years 2012, 2013, and 2014; and a statement of the income distributions made to David from the Trust for the years 2012, 2013 and 2014. The Cooks additionally argue that they should be given information regarding David's benefits under the Clarence Trust because it is directly relevant to whether an invasion of the Trust principal is warranted.

Art. XIV of the Trust provides in pertinent part:

> The Trustee and all Successor Trustees shall not be required to give any bond or surety or file any account in any court, but shall deliver regular accounts to the Settlor during the Settlor's lifetime and subsequently to all adult beneficiaries *then entitled* to receive income or principal of the trust estate.

(Emphasis added.) By the explicit provisions of the Trust, Bank, as Successor Trustee, is obligated to provide only "beneficiaries *then entitled*" with accounting information. Because William had no children and predeceased Elaine, and because David had no children, the only beneficiary entitled to receive income or principal from the Trust was David. The Cooks are only beneficiaries entitled to receive anything from the Trust, pursuant to Art. V.B.(b), if David does not have surviving issue at his death *and* if they fall under the class of the "Settlor's heirs at law as determined by the laws of the State of Hawai'i in force at such time."

The Cooks contend that Hawaii Revised Statutes ("HRS") section 560:7-303 supersedes Article XIV of the Trust and entitles them to receive accounting and information relating to trust assets. More specifically, the Cooks, citing to HRS

section 560:7-303(2) and (3),[6] argue that as beneficiaries under HRS section 560:1-201, which includes any person with a "future interest, vested or contingent,"[7] the Probate Code "requires that 'upon reasonable request' the trustee 'shall provide the beneficiary [. . .] with information about the assets of the trust and the particulars relating to its administration,'" and "'upon reasonable request,' the beneficiary 'is entitled to a statement of the accounts of the trust annually.'"

Relying on *In re Childress Tr.*, 486 N.W.2d 141 (Mich. Ct. App. 1992) and *Hollenbeck v. Hanna*, 802 S.W.2d 412 (Tex. Ct. App. 1991), the Cooks assert that other jurisdictions have held that a trustee's statutory duty to account to beneficiaries in probate court cannot be abrogated by a trust provision. Both cases are inapposite and fail to establish the point.

In *Childress*, the court held that because the petitioner was a remainder beneficiary with a *presently vested interest*, not a contingent one, the lower court erred as a matter of law under a statute requiring the trustee to provide accounting to "presently vested beneficiaries." 486 N.W.2d at 144, 146. Unlike the remainder beneficiary in *Childress*, the

---

[6]    HRS section 560:7-303 (2006) provides in pertinent part:

> The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration; provided, however, during the life of the settlor, the trustee of a revocable inter vivos trust shall not be required to register the trust, reveal the terms to beneficiaries, or account to beneficiaries, unless otherwise directed by the settlor. In addition:
>
> . . . .
>
> (2)   Upon reasonable request, the trustee shall provide the beneficiary with a copy of the terms of the trust which describe or affect the beneficiary's interest and with information about the assets of the trust and the particulars relating to the administration.
>
> (3)   Upon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee.

[7]    In pertinent part, HRS section 560:1-201 (2006) defines "beneficiary" as it relates to a "trust beneficiary," as including "a person who has any present or future interest, vested or contingent[.]"

Cooks are *contingent* remainder beneficiaries. Additionally, unlike the court in *Childress*, which addressed whether the trust instrument could relieve the trustee of the obligation to account to petitioner, 486 N.W.2d at 145, no party in this case argues that the Trust relieves Bank of its obligation to account to the beneficiaries of the Trust, and the Probate Court never ruled that it did.

In *Hollenbeck*, the court's guiding concern was the settlor's intent, not whether statutory law could be abrogated by the terms of a trust. The court explained that the lower court had incorrectly interpreted the will and given too little weight to statutory law. *Hollenbeck*, 802 S.W.2d at 414. In its analysis, the court focused on the fact that the petitioner, who was the settlor's daughter, was tasked with overseeing operations of trust-owned property and was the sole remainder beneficiary as explicitly provided for in the trust. *Id.* Under those circumstances, the court reasoned that the settlor did not intend to deny his daughter the right to ask for an accounting relating to the property. *Id.* at 415. Unlike the daughter and direct beneficiary in *Hollenbeck*, the Cooks are not named in the Trust, they have no vested interest in the Trust, they are not involved in the operations of Trust property, and their relationship to Elaine is far more remote. More importantly, here, there is no indication in the Trust or otherwise that Elaine intended to allow the Cooks to receive an accounting. The Cooks' assertion is therefore without merit.

As explained above, a trust may alter the amount of information a trustee must give the beneficiaries, and can dispense with or limit accounting information statutorily required except as prohibited by statute. *See* Restatement (Third) of Trusts § 82 cmt. a(2); Restatement (Third) of Trusts § 83 cmt. d. HRS section 560:7-303 does not prohibit Bank from limiting its obligation to provide accounting information to only current beneficiaries, which Art. XIV unambiguously provides for. The Cooks are contingent remainder beneficiaries, which the Hawai'i Supreme Court has described as members of a class living at a particular time that cannot be ascertained until the

occurrence of a future event. *Carter v. Davis*, 18 Haw. 439, 444 (Haw. Terr. 1907). Contingent remainder beneficiaries retain an interest that will only vest if they are surviving at the death of the life tenant. *Id.* at 446. There is no indication in the Trust or otherwise that Elaine intended to allow contingent remainder beneficiaries to receive accounting information.

Accordingly, because the Cooks were not "beneficiaries *then entitled* to receive income or principal of the trust estate" under Art. XIV, Bank was not required to provide the requested-information to the Cooks. *See e.g.*, *In re McGuire Marital Tr.*, 660 N.W.2d 308, 312-15 (Wis. Ct. App. 2003) (holding that contingent remainder beneficiary was not entitled to accounting under the trust document where the terms of the trust unambiguously only required accountings to be delivered to "beneficiaries then eligible to receive the income" and that the terms of the trust gave the sole current income beneficiary exclusive authority to approve trustee's accountings);[8] *cf.* *Steiner v. Hawaiian Tr. Co.*, 47 Haw. 548, 561-62, 393 P.2d 96, 105 (1964) ("In the absence of specific directions in the trust instrument as to the investment of trust funds the trustee's duties to the beneficiaries are controlled by . . . statute[.]").

Therefore, the Probate Court did not err in refusing to order Bank to provide the Cooks with financial information relating to the Trust and the Clarence Trust. The Cooks' second point is thus without merit.

 C. The Probate Court abused its discretion by granting the Cooks' request for attorneys' fees and costs to be paid from the Trust.

On cross-appeal, David contends that "[t]he Probate Court abused its discretion by granting [the Cooks'] request to

---

[8] Like our jurisdiction—which affords broad discretion to a settlor to control the administration of a trust and which discourages court involvement absent a trustee's dishonest motive or failure to use reasonable judgment, *see* Haw. Rev. Stat. § 560:7-201(b), *Dowsett*, 47 Haw. at 581, 393 P.2d at 93—the court in *McGuire* acknowledged that the Wisconsin legislature had given settlors broad discretion to control the administration of their trusts and that "as long as trustees act in good faith, from proper motives, and within the bounds of reasonable judgment under the trust's terms and conditions, the court has no right to interfere." 660 N.W.2d at 314 (brackets omitted) (quoting *In re Uihlein Trust*, 417 N.W.2d 908, 912 (Wis. Ct. App. 1987)).

have their attorneys' fees and costs paid from the Trust, because their fees and costs were incurred exclusively for their benefit and not for the benefit of the Estate." In the alternative, David contends that "the Probate Court abused its discretion by including in the grant of attorneys' fees and costs to [the Cooks] those fees and costs that were incurred to seek an accounting and other financial information from the Trust."

"The general rule is that each party to litigation must pay his own counsel fees, in the absence of an agreement or statutory authority for recovery thereof." *In re Campbell's Estate*, 46 Haw. 475, 522, 382 P.2d 920, 953 (1963) (citing *Mid-Pac. Dress Mfg. Co. v. Cadinha*, 33 Haw. 456, 478 (Haw. Terr. 1935)). "As an exception to this general rule, when litigation is in advancement of, and not in opposition to, the interests of *all the beneficiaries* of a trust, counsel fees may be allowed to litigants out of the estate." *Id.* (emphasis added) (citing *Evans v. Garvie*, 23 Haw. 694 (Haw. Terr. 1917)). "Such fees have been allowed and charged to corpus when the construction of an ambiguous will was involved[.]" *Id.* (citing *Fitchie v. Brown*, 19 Haw. 415 (Haw. Terr. 1909); *In re Estate of Foster*, 34 Haw. 376 (Haw. Terr. 1937)).

Although the underlying action in this case involves the construction of an ambiguous trust provision, the Cooks' involvement was not clearly in advancement of *all the beneficiaries* of the Trust.

In support of David's position, Bank argues that the Cooks' participation in the proceedings was motivated by their desire to enlarge any beneficial interest they might have under the Trust and did not benefit the Trust or the interests of all parties involved. Bank further asserts that the Cooks did nothing to aid the Probate Court in construing the Trust, and in fact, made the proceedings more complex by creating unnecessary delays and expenses.

The Cooks counter that their challenge to Bank's Petition benefitted all parties involved, and that it was crucial for Bank to claim that the interests of any unborn or unascertained beneficiaries were adequately represented by other

parties having substantially identical interest in this proceeding. Regarding the Cooks' request for financial information, they assert that their request promotes transparency in trust administration, which benefits the Trust as a whole and all related parties.

In light of the arguments set forth and extrinsic evidence submitted by the Cooks, highlighting their alleged "warm relationship" with Elaine and the alleged strained relationship between David and Elaine, the Cooks do not appear to have intended benefit to *all* Trust beneficiaries. Furthermore, when considering that Bank, as the Successor Trustee, and David, as the primary beneficiary, were in agreement as to the proposed modifications of Art. V.B.(a) of the Trust, it is apparent that the Cooks' actions created unnecessary delay and expenses. The allowance of attorneys' fees and costs for the Cooks would only serve to deplete the Trust's principal, which would be in opposition to Elaine's intent to provide for David and his issue.

Accordingly, the Probate Court abused its discretion by granting the Cooks' request for attorneys' fees and costs to be paid from the Trust. *See Bishop Trust Co. v. Cooke Trust Co.*, 39 Haw. 641, 652 (Haw. Terr. 1953) ("An unsuccessful claimant to a certain fund of a trust estate is not entitled to costs and expenses, including attorneys' fees, out of the corpus of the trust estate." (quoting *Von Holt v. Williamson*, 23 Haw. 245 (Haw. Terr. 1916))); *Von Holt*, 23 Haw. at 248 (noting that "[i]t is well established that fees of counsel for a litigant whose interest is contingent cannot be allowed out of the trust fund" (citing *Union Ins. Co. v. Van Rensselaer*, 4 Paige Ch. 85 (N.Y. Ch. 1833))).[9] Therefore, we reverse the Order and Judgment as it relates to the Cooks' attorneys' fees and costs.

---

[9] *See also In re Phelps' Estate*, 283 P.2d 293, 294-295 (Cal. Dist. Ct. App. 1955) (denying attorney's fees from the trust because the services rendered were solely for the benefit of the trust beneficiary and did not enhance the value of or benefit the estate); *In re Dumaine*, 600 A.2d 127, 131-32 (N.H. 1991) (holding trial court did not abuse its discretion in rejecting attorney's fees for alleged "legitimate beneficiary" of trust because her primary motive was not for the benefit of the trust as a whole but rather for her own benefit against her arguments that her participation in the proceedings aided the trial court with key and relevant legal analysis and corrected misleading and erroneous assertions made by the petitioners).

V.    DISPOSITION

Based on the foregoing, we affirm the December 16, 2015 Judgment and Order entered by the Probate Court in all respects except as to the grant of the Cooks' attorneys' fees and costs which were to be paid out of the Trust.  We reverse the Judgment and Order as to those fees and costs.

DATED:  Honolulu, Hawai'i, June 10, 2019.


On the briefs:

Thomas E. Bush
(Thomas Bush Law Office LLLC)
for Respondents-Appellants/
Cross-Appellees, Kristin Linae
Cook Kline, Larry Thomas Cook,
Cathy Leann Cook Bornhorst,
Susan Kay Cook Galvin, and
Jodi Charlene Cook Bosben.

Rosemarie S.J. Sam,
Edmund K. Saffery, and
Lynda L. Arakawa
(Goodsill Anderson Quinn &
Stifel)
for Petitioner-Appellee/Cross-
Appellee, First Hawaiian Bank.

Rhonda L. Griswold,
Calvert G. Chipchase,
Summer G. Shelverton, and
Stacy K. Takekawa
(Cades Schutte)
for Respondent-Appellee/
Cross-Appellant, David Short

Presiding Judge

Associate Judge

Associate Judge

21